IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOWARD ROBSON INC.,
and LIBERTY MUTUAL
INSURANCE CO.,

    *Plaintiffs*,

v.

THE TOWN OF RISING SUN,

    *Defendant*.

Civil Action No. ELH-14-2003

## MEMORANDUM OPINION

This case arises out of a contractual dispute related to the renovation of a wastewater[1]

treatment facility commissioned by The Town of Rising Sun, a municipal corporation located in

Cecil County, Maryland ("Rising Sun" or the "Town").

On or about March 20, 2012, Rising Sun entered into an agreement (the "Contract") with

Howard Robson Inc. ("HRI") for the construction of specific, significant improvements to a

wastewater treatment facility in the Town, for the sum of $7,754,240 ("Project").  ECF 1 ¶¶ 11-

12.  The Project was to be substantially completed in 639 days.  *Id.* ¶ 13.  To ensure satisfactory

completion of the Project, the agreement mandated that HRI secure payment and performance

bonds.[2]  ECF 8 at 18 ¶ 10.  Accordingly, HRI, as principal, secured payment and performance

---

[1] In their pleadings, the parties spell "wastewater" as one word.  But, in certain exhibits, such as ECF 14-4, a Notice of Termination of the Town of Rising Sun Waste Water Treatment Plant Project dated May 30, 2014, the term is spelled as "waste water."  For the purpose of this Memorandum Opinion, I will adopt the spelling used by the parties in their pleadings.

[2] In their Complaint, plaintiffs use the phrase "payment and performance bonds", ECF 1 ¶ 14, while Rising Sun uses the proper noun format, "Payment and Performance Bonds."  ECF 8 at 18 ¶ 10.

bonds from Liberty Mutual Insurance Company ("Liberty") as Surety.  *Id.*  On April 5, 2014, HRI terminated the Contract.  ECF 1 ¶ 63.

Plaintiffs HRI and Liberty filed suit against Rising Sun, defendant, (ECF 1, "Complaint"), alleging that the Town inhibited successful completion of the Project.  The Complaint contains three claims:  Breach of Contract (Count I); Quantum Meruit and Quantum Valebant (Count II); and Unjust Enrichment (Count III).[3]  The Complaint alleges, *inter alia*, that plaintiffs are entitled to payment for delays and disruption in the progress of the Project caused by defendant, costs and expenses incurred by HRI, and for defendant's retention of benefits provided by HRI without payment.[4]  *Id.* ¶¶ 26-52.  As to Count I, HRI seeks $1,714,204.20 as a result of defendant's alleged breach of contract; $284,523.82 for unpaid change orders; $260,388,32 in retention withheld by defendant for completed work; and demobilization costs of about $60,000.  *Id.* ¶¶ 87, 91, 94, 96.  Moreover, HRI anticipates additional expenses from vendors that fabricated material and equipment for the Project.  *Id.* ¶ 95.

---

[3] Plaintiffs appended to the Complaint several exhibits: a Form of Agreement Between Owner and Contractor for Construction Contract dated March 20, 2012, signed by HRI and Rising Sun (ECF 1-1, "Agreement"); correspondence dated March 21, 2014, from HRI to Rising Sun and CDM Smith, Inc., Rising Sun's engineer and construction manager (ECF 1-2); and a Notice dated April 5, 2014, from HRI to Rising Sun and CDM Smith, Inc. terminating the Contract (ECF 1-3).  As HRI notes, ECF 1 ¶ 10, the Contract includes other documents, such as the General Conditions, Technical Specifications, and the Drawings, which are "too voluminous to attach as an exhibit to the Complaint and Defendant is already in possession of same."

[4] Plaintiffs allege subject matter jurisdiction on the basis of diversity of citizenship.  *See* ECF 1 ¶ 4; 28 U.S.C. § 1332.  In particular, HRI is a corporation organized under the laws of Pennsylvania, with its principal place of business in Landisville, Pennsylvania.  ECF 1 ¶ 1. Liberty is a corporation organized under the laws of Massachusetts, with its principal place of business in Boston, Massachusetts.  *Id.* ¶ 2.  Defendant and counterclaimant Rising Sun is a municipal corporation organized under the laws of Maryland, with its principal place of business in Rising Sun, Maryland.  *Id.* ¶ 3.

Rising Sun filed an Answer (ECF 8 at 1-16, "Answer") and Counterclaim (ECF 8 at 16-32, "Counterclaim").[5]  Count I of the Counterclaim alleges breach of contract against HRI for failure to complete the Project.  Count II alleges breach of contract against Liberty for failure to perform its obligations under the Performance Bond.

Currently pending before the Court is Liberty's Motion to Dismiss the Counterclaim for failure to state a claim (ECF 14), and a memorandum in support thereof (ECF 14-2)" (collectively, the "Motion").[6]  According to Liberty, Rising Sun failed to comply with the "clear and unambiguous conditions precedent" necessary to trigger relief under the Performance Bond. ECF 14-2 at 1-2.  Defendant opposes the Motion (ECF 17, "Opposition"), and Liberty has submitted a Reply (ECF 27, "Reply").

The Motion has been fully briefed, and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For reasons that follow, I will deny the Motion.

## I. FACTUAL BACKGROUND[7]

On or about March 20, 2012, Rising Sun entered into a Contract with HRI for construction of certain improvements to an existing wastewater treatment facility located in Rising Sun, Maryland for the fixed amount of $7,752,240.  ECF 8 at 17 ¶ 5.  These funds were to be provided for in part by the American Recovery and Reinvestment Act of 2009 ("ARRA"), administered by the United States Department of Agriculture ("USDA").  *Id*.  The ARRA

---

[5] ECF 8 is comprised of the Answer and the Counterclaim, as one document.  Pages 1-16 of ECF 8 constitute the Answer.  Pages 16-32 of ECF 8 constitute the Counterclaim.  The numeration of the paragraphs in ECF 8 begins again on page 16 in connection with the Counterclaim.  Therefore, when referring to ECF 8, I will indicate both the paragraph number and the page number.

[6] Liberty appended to its Motion two exhibits: the unexecuted Performance Bond (ECF 14-3) and the Notice of Termination of the Town of Rising Sun Waste Water Treatment Plant Project dated May 30, 2014 (ECF 14-4).

[7] Unless otherwise indicated, the factual background is drawn from the Counterclaim.

program is set to expire on September 30, 2015, at which time program funds not approved and released would no longer be available.  ECF 8 at 18 ¶ 9.

The Contract provided for construction of multiple structures and systems, including, *id.* at 17 ¶ 6, the following:

> Headworks equipment and structure, influent pump station, valve vault, selector reactor, oxidation ditch, post anoxic tanks/re-areation reactor, secondary clarifiers and pump station, compressor building, filters, ultraviolet disinfection system, effluent metering tank, plant operations building, water well, electrical service and emergency generator, instrumentation and control system and related appurtenant work.

The Project plans and specifications, which form the basis of the Contract, were originally designed by RK&K Engineers ("RK&K").  ECF 1 ¶ 15.  However, "[s]ometime before HRI's commencement of physical construction" for the Project, Rising Sun terminated its engagement with RK&K and retained CDM Smith, Inc. ("CDM") as a replacement.  *Id.* ¶ 16.  As a result, throughout the Project, CDM "administer[ed] the construction based upon a set of plans and specifications which CDM did not prepare."  *Id.* ¶ 17.

According to Rising Sun, "Work" is broadly defined in the Contract as "'[t]he entire construction or the various separately identifiable parts thereof required to be provided under the Contract Documents.'"  ECF 8 at 24 ¶ 33 (quoting Art. 1.01(A)50 of the Standard General Terms and Conditions of the Contract).  The Contract provided that "time is of the essence" and the Project was to be "substantially completed within 639 days and ready for final payment within 669 days . . . ."  ECF 8 at 17 ¶ 8.

Under the Contract, HRI was to secure payment and performance bonds for the Project.  ECF 8 at 18 ¶ 10.  On or about March 21, 2012, Liberty, as Surety, and HRI, as principal, provided a "Performance Bond", Bond Number. 837053693, to Rising Sun, as obligee, in connection with HRI's performance of the Contract (the "Bond"), in the amount of $7,752,240.

*See* Bond, ECF 17-1 at 2.  The Bond designated HRI as the Contractor, Rising Sun as the Owner, and Liberty as the Surety.  *Id.*

The Bond also provided that, in the event of termination of the Contract for a reason other than a breach by Rising Sun, Liberty, as the Surety, must perform one of the following actions, ECF 8 at 30-31 ¶ 61:

> a.      Arrange for HRI, with the consent of Rising Sun, to perform and complete the Contract;
> b.      Undertake to perform and complete the Contract itself, through its agents or through independent contractors;
> c.      Obtain bids or negotiated proposals from qualified contractors acceptable to Rising Sun for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by Rising Sun and contractor selected with Rising Sun's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Contract, and pay to Rising Sun the amount of damages in excess of the balance of the Contract Price incurred by Rising Sun resulting from HRI's default.

On or about June 28, 2012, after acquiring the permits and approvals necessary to commence construction, Rising Sun issued a Notice to Proceed to HRI.  *Id*. at 18 ¶ 11.  HRI began construction on or about July 12, 2012, and was scheduled to reach "substantial completion" of the Project by April 12, 2014.[8]  *Id.*

Rising Sun alleges that "[w]ork on the Project progressed at a reasonable pace for approximately the first seven months, without any significant delays or disruptions."  *Id*. at 18 ¶ 12.  By March 2013, according to HRI's applications for payment, HRI had completed approximately 70% of the Project and received $5,728,122.26, "less retainage."  *Id*.  As a result, Rising Sun was "taken by surprise" when HRI sent correspondence dated April 16, 2013, "'irrevocably'" demanding that "all payments due or to become due" for services under the Contract were to be made payable to HRI, but "sent to Liberty on the Performance and Payment

---

[8] Rising Sun does not indicate whether the numbers of days to complete the Project commences on the date of the Contract or the date of the Notice to Proceed.

Bonds for the Project."  *Id.* at 18 ¶ 13.  Rising Sun received no further information as to why it was directed to make Contract payments to Liberty.  *Id.*

In correspondence dated May 1, 2013, Liberty informed Rising Sun that, to facilitate the completion of the Project, Liberty would "'financially assist'" HRI.  *Id.* at 18 ¶ 14.  The letter also stated that Liberty retained the "'unilateral right to cease such assistance in the future.'"  *Id.* But, Liberty indicated that, prior to making such a decision, it would address the situation with Rising Sun.  *Id.* at 18-19 ¶ 14.  As a result of the correspondence, "Rising Sun became very concerned about HRI's financial solvency and its ability to complete the Project on time and within budget."  ECF 8 at 19 ¶ 15.

In correspondence from HRI to the engineer, CDM, dated May 15, 2013, HRI confirmed Liberty's plan to assist HRI financially.  *Id.* at 19 ¶ 16.  According to Rising Sun, HRI stated, *id.*:

> "Please accept this letter . . .  as HRI's confirmation of its commitment to complete the project on time . . . . Cash flow has been a concern and all of our projects have been lumped together by the bonding company in order to ensure a successful completion on all of the projects.  There should be no concerns given our commitment to this project through all the issues that we continue to work through with both you and the owner."

Rising Sun asserts that, despite "assurances from HRI and Liberty," after disclosure of these "financial difficulties," HRI's "performance became very erratic."  *Id.* at 19 ¶ 17.

Rising Sun explains, *id.* at 19-20 ¶ 17:

> There were multiple changes of HRI project managers and other personnel on the Project, which lead to confusion and poor coordination of submittals.  HRI also became aggressive about pursuing change orders for Work included in their Contract scope, or reasonably inferable therefrom.  When part of a particular structure or area of work was undergoing design modification, HRI refused to undertake other portions of the work not affected by the modifications on the grounds that it was inefficient to do so.   At Project progress and coordination meetings, HRI personnel would collaborate on proposed design modifications, then return to their office to fire off letters complaining about delays, submittals, etc.  Rising Sun did not realize it at the time, but under the yoke of Liberty, HRI

was not going to receive the financial assistance it required to complete the Project if completion extended beyond April, 2014.

In its Counterclaim, Rising Sun provided an example of HRI's "erratic" behavior due to a Project design modification. ECF 8 at 20 ¶ 18. It involved a disagreement between the parties concerning alteration of the design for the Headworks and Plant Operations structures, so as to comply with applicable fire codes. *Id.* These buildings were originally designed to be built with wood surrounded by metal siding. *Id.* CDM considered a proposed design modification involving replacement of the wood and metal siding with certain non-combustable materials, such as concrete plank or block. *Id.* In response, "HRI raised no objection to the proposed modifications to the structures, participated in the discussions, and collaborated in efforts to determine costs" and effect on the schedule. *Id* at 20 ¶ 19. However, in the meantime, "HRI removed the bulk of its workforce from the Project site beginning May 27, 2013 while the design issues were reviewed and discussed, despite Rising Sun's request that HRI continue to work on areas not impacted by the design modifications." *Id.*

HRI returned to the Project shortly after execution of a design amendment to the Contract. *Id.* at 20 ¶ 20. CDM was given the authority to "proceed with certain design modifications" with respect to the Headworks and Plant Operations buildings. *Id.* The Town asserts that HRI resumed work on other tasks, attended progress meetings, and submitted work change orders and applications for payments to Rising Sun. *Id.* at 20-21 ¶ 20. In particular, between July and October 2013, HRI submitted applications for payment in excess of $1,000,000, which increased percentage of Project completion to 85%. *Id.* at 21 ¶ 21.

In "October and November, 2013, CDM Smith submitted the design revisions involving the Headworks and Plant Operations buildings to HRI for pricing." *Id.* at 21 ¶ 22. In January 2014, HRI informed Rising Sun that these modifications would cost in excess of $1,000,000. *Id.*

at 21 ¶ 23.  Rising Sun was "shocked to learn" of the immense cost of the modification, "a figure not remotely close to the previous estimates with which HRI had concurred."  *Id.*  Accordingly, "[f]or budgetary reasons," Rising Sun rejected HRI's price and directed CDM to utilize the original design, which, as indicated, called for wood and metal siding.  *Id.* at 21 ¶ 24.

On February 20, 2014, at a progress meeting, CDM committed to completing the design revisions by the end of March 2014.  *Id.* at 21 ¶ 25.  Therefore, it "caught Rising Sun completely by surprise when, in correspondence dated March 21, 2014, HRI provided notification of its intent to terminate the Contract" due to Rising Sun's alleged "'suspension' of the Work by Rising Sun."  *Id.* at 21 ¶ 26.

In seeking termination, HRI relied, *inter alia*, on the Standard General Terms and Conditions of the Contract ("General Conditions").  *Id.* at 22 ¶ 28.  Article 15.04(A) provides that HRI may terminate the Contract and recover payment from Rising Sun if work is suspended by Rising Sun for more than 90 consecutive days, through no fault of HRI.  *Id.* at 22 ¶ 29.  Article 15.03 provides that, upon seven days written notice to Owner, *i.e.*, Rising Sun, and Engineer, within that time, the Contractor has the right to terminate the Contract and recover from the Owner amounts owed to the Contractor as if the Owner had terminated the Contract for convenience.  *Id.* at 23 ¶ 31.

HRI asserted in a letter of March 21, 2014, that all "critical path work[9] on the Project 'ha[d] been suspended for more than 300 days and all project work ha[d] been suspended for over 120 days,'" ECF 8 at 22 ¶ 28, as a result of "'significant redesign of the Project' by CDM," including modifications to the Headworks and Plant Operations buildings.  ECF 8 at 22 ¶ 26.  The correspondence also stated:  "'[T]his letter serves as formal notice that unless the suspension

---

[9] Rising Sun notes that, under the Contract, the term "Work," defined in Article 1.01(A)50 of the General Conditions, "makes no distinction between work that is on the critical path versus work that is not."  ECF 8 at 24 ¶ 33.

is remedied within seven days, Contractor will terminate the Contract pursuant to Article 15.04(A) [of the General Conditions].'" ECF 8 at 22 ¶ 28.

HRI also indicated on March 21, 2014, that the design modifications that had been discussed for months concerning the fire code would cause completion of the Project to be delayed until at least November 30, 2015. ECF 8 at 22 ¶ 27. According to Rising Sun, "HRI's unilateral selection of this date was not arbitrary; it was aware that the ARRA funding for the Project terminated on September 30, 2015." *Id.*

In the Counterclaim, Rising Sun relies on Article 15.01(A), which gives it the right to suspend the Work for a period not to exceed 90 consecutive days. *Id.* at 23 ¶ 30. To invoke Article 15.01(A), Rising Sun must provide written notice to the Contractor and Engineer. *Id.* Article 15.01 states, in part, *id.*:

> 15.01 *Owner May Suspend Work*
>
> A.     At any time and without cause, Owner may suspend the Work or any portion thereof for a period of not more than 90 consecutive days by notice in writing to Contractor and Engineer which will fix the date on which Work will be resumed. Contractor shall resume the Work on the date so fixed. Contractor shall be granted an adjustment in the Contract Price or an extension of the Contract Times, or both, directly attributable to any such suspension if Contractor makes a Claim therefore as provided in Paragraph 10.05.

Rising Sun contends, ECF 8 at 23-24 ¶ 32:

> In fact, Rising Sun never ordered Work under the Contract suspended for more than 90 consecutive days (or, for that matter, any lesser period of time), either verbally or in writing. Nor did Rising Sun or CDM Smith ever instruct HRI not to perform or complete the Contract. To the contrary, HRI, Rising Sun, CDM Smith and USDA participated in regular, monthly progress and coordination meetings through March 2014 . . . . Moreover, HRI submitted regular, monthly applications for payment to CDM Smith and Rising Sun [for] Work performed on the Project for which it was paid over $1,000,0000 since May 2013 (the beginning of the alleged suspension of the Work according to HRI).

Rising Sun also alleges, *id.* at 24 ¶ 34:

Prior to receiving HRI's March 21, 2014 letter, HRI never notified Rising
Sun or CDM Smith, either formally or informally, that it considered Work under
the Contract to have been suspended.  If HRI truly believed the Work had been
suspended, it had a duty to notify Rising Sun immediately, and not wait almost
eleven months to do so (while at the same time seeking alleged delay costs).

On March 24, 2014, a progress meeting was held for the Project, attended by
representatives of HRI, Rising Sun, CDM, and USDA.  *Id.* at 24 ¶ 35.  Rising Sun claims that it
"emphatically denied having suspended Work on the Project" and "rejected HRI's purported
right to terminate the Contract."  *Id*.  Rising Sun also directed CDM to provide HRI with the
plans and specifications with respect to the proposed design revisions to the Plant Operations and
Headworks structures by March 28, 2014.  *Id*.  In turn, HRI agreed to submit new pricing
proposals in connection with the design revisions within three weeks of receiving the
specifications from CDM.  *Id.* at 24-25 ¶ 35.  During the meeting, the USDA confirmed that the
Project would be "fully funded through September, 2015."  *Id.* at 25 ¶ 35.

According to Rising Sun, "HRI gave no indication" at the progress meeting, "or at any
time prior to terminating the Contract, that the issues raised in its notice of intent to terminate
had not been satisfactorily addressed."  *Id.* at 25 ¶ 36.  Counsel for Rising Sun confirmed as
much in a letter to HRI dated March 27, 2014, "to which no response was received."  *Id.*

On March 28, 2014, CDM delivered to HRI the revised plans and specifications in
connection with the Plant Operations and Headworks buildings.  *Id.* at 25 ¶ 37.  Nonetheless, in
correspondence from HRI dated April 5, 2014, HRI declared that it was terminating the Contract.
*Id.* at 25 ¶ 38.  Rising Sun did not formally declare a suspension of the work pursuant to Article
15.04(A) of the General Conditions.  But, according to HRI, Rising Sun had effectively
"'abandoned the [Project] through ongoing redesigns.'"  *Id.* (alteration in ECF 8).

In a letter dated April 14, 2014, Rising Sun rejected HRI's termination of the Contract. *Id.* at 25 ¶ 39. Citing Art. 10.01(A) of the General Conditions, Rising Sun claimed that it had the right to revise the work by a change order, "'without invalidating the Contract.'" *Id.* In the letter, Rising Sun "notified HRI and Liberty that it was considering declaring HRI in default of the Contract unless HRI immediately returned to complete construction of the Project." ECF 8 at 26 ¶ 40. Rising Sun claimed that, under Article 6.18(A) of the General Conditions, HRI was required to "carry on the Work during disputes or disagreements with Rising Sun." *Id.* at 26 ¶ 39. Moreover, Rising Sun asserted that "HRI's persistent failure to perform the Work," in accordance with Article 15.02(A) of the General Conditions, "justified Rising Sun's termination of the Contract for cause." *Id.* at 26 ¶ 40. And, Rising Sun notified HRI and Liberty of its intention to hold them liable for all damages incurred as a result of HRI's default. *Id.* at 30 ¶ 56.

Rising Sun demanded a conference with HRI and Liberty to discuss performance of the Contract. *Id.* On May 12, 2014, HRI, Liberty, and Rising Sun attended a confidential mediation facilitated by a third party mediator. *Id.* at 26 ¶ 41. However, the parties were unable to resolve their disputes. *Id.*

In correspondence to HRI and Liberty dated May 30, 2014, Rising Sun terminated the Contract for cause, pursuant to Article 15.02(A) of the General Conditions, due to "HRI's failure to return and complete the Project…." *Id.* at 26 ¶ 42. Shortly thereafter, plaintiffs filed suit. As noted, they have asserted claims for breach of contract (Count I); Quantum Meruit and Quantum Valebant (Count II); and Unjust Enrichment (Count III). ECF 1.

As indicated, plaintiffs allege, *inter alia*, that they are entitled to payment for delays in the progress of the Project caused by the Town and for the Town's retention of benefits and labor provided by HRI, without payment. In response, Rising Sun filed an Answer and Counterclaim

against HRI, alleging breach of contract for failure to complete the Project, and a Counterclaim

against Liberty for breach of contract for failure to comply with the Bond.

Additional facts are included in the Discussion.

## II. DISCUSSION

### A.    *Standard of Review*

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint.  To

survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed.

R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the

pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair

notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555-56 & n.3 (2007).  That showing must consist of more than "a formulaic recitation

of the elements of a cause of action" or "naked assertion[s] devoid of further factual

enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see*

*Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show

that [the] claim has substantive plausibility."  *Johnson v. City of Shelby, Miss*., ____ U.S. ____,

135 S. Ct. 346, 347 (2014); *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the

pleading standard for 'all civil actions' . . . .") (citation omitted); *Twombly*, 550 U.S. at 570; *see*

*also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v.*

*United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).  If the "well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct," the complaint has

not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak,* 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied,* ____ U.S. ____, 132 S. Ct. 402 (2011). The complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570; *accord Iqbal,* 556 U.S. at 680.

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v. Boykins,* 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009). Nor must it accept legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or legal conclusions drawn from the facts. *See Papasan v. Allain,* 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville,* 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied,* 559 U.S. 992 (2010).

Courts generally do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal

adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies … if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman*, 494 F.3d at 464 (quoting *Richmond*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ."  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss, "'so long as they are integral to the complaint and authentic.'"  *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

Liberty appended a copy of the Bond to its Motion and Reply.[11]  *See* ECF 14-3 (unexecuted); ECF 27-1 (executed).  To its Opposition, Rising Sun also appended, among other

---

[11] Liberty also attached to its Reply a Subcontract Performance Bond dated January 7, 2002, between HRGM Corporation and Atlantic Mutual Company (ECF 27-2).

exhibits, a signed copy of the Bond that forms the basis for its Counterclaim against Liberty.[12] *See* ECF 17-1 at 2-5.  Because the Bond is integral to the Counterclaim, it may be considered, without converting the Motion to one for summary judgment.

### B.   *Choice of Law*

The Bond contains a provision allowing the parties to bring suit in any court where a substantial part of the work has been performed.  This provision speaks only to where suit may be brought, not what law should apply.  Bond ¶ 8, ECF 17-1 at 4.  Without further explanation, the parties have briefed the issues as if Maryland's substantive law governs the dispute.

A federal court sitting in diversity must apply the law of the state in which the court is located, including the forum state's choice-of-law rules, unless a compelling federal interest directs otherwise.  *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.,* 807 F.Supp.2d 386, 389 n. 13 (D. Md. 2011).  As a general matter, "[a] formal suretyship agreement is a contract" to which "general principles of contract interpretation" apply.  Restatement (Third) of Suretyship & Guaranty §§ 1, 14 (1996).  Similarly, WILLISTON ON CONTRACTS § 32:16 (4th ed.) provides: "Generally speaking, suretyship contracts are interpreted like any other contract."  As to contract claims, Maryland applies the law of the state in which the contract was formed (*"lex loci contractus"*), unless the parties to the contract agreed to be bound by the law of another state.  *See, e.g., Am. Motorists Ins. Co. v. ARTRA*

---

[12] Rising Sun also appended several other exhibits to its Opposition, including correspondence dated April 16, 2013, from HRI to Rising Sun, ECF 17-1 at 6-7; correspondence dated May 15, 2013, from HRI to Rising Sun, *id.* at 8-9; correspondence dated May 1, 2013, from counsel for Liberty to Rising Sun, *id.* at 10-11; correspondence dated March 21, 2014, from HRI to Rising Sun and CDM, *id.* at 12-19; correspondence dated April 5, 2014, from HRI to Rising Sun and CDM, *id.* at 20-24; correspondence dated April 14, 2014, from counsel for Rising Sun to HRI, *id.* at 25-29; correspondence dated April 22, 2014, from Liberty to counsel for Rising Sun, *id.* at 30-32; correspondence dated May 30, 2014, from counsel for Rising Sun to HRI, *id.* at 33-36.  I have not considered these exhibits as they are not integral to the Counterclaim and thus may not be considered in resolving a motion to dismiss.  *See Oberg, supra,* 745 F.3d at 136.

*Group, Inc.,* 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.,* 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd,* 437 Md. 372, 86 A.3d 1245 (2014).  A contract is formed where the last act necessary to make it binding occurs.  *Konover Prop. Trust Inc. v. WHE Assocs.,* 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citation omitted).

Because the parties assume Maryland law applies and have not identified a state law conflict, I will apply Maryland law in resolving Liberty's Motion.  *See Ohio Sav. Bank v. Progressive Cas. Ins. Co.,* 521 F.3d 960, 962 (8th Cir. 2008) ("Like the district court, we will ignore what might be a complex choice of law analysis because the parties have not identified a relevant state law conflict."); *Cleaning Auth., Inc. v. Nubert,* 739 F.Supp.2d 807, 820 (D. Md. 2010) (" 'Choice-of-law analysis becomes necessary ... only if the relevant laws of the different states lead to different outcomes.' ") (citation omitted).

### C. Liberty's Motion to Dismiss

In seeking dismissal of the Counterclaim, Liberty argues that Rising Sun's claim is barred because Rising Sun did not satisfy conditions precedent in the Bond that are necessary to trigger Liberty's obligations under the Bond.  ECF 14-2 at 3.

According to Liberty, "[t]he Bond requires at least two notices to Liberty relevant here, both of which Rising Sun failed to provide."  *Id.*  Liberty summarizes the two notices, as follows, *id.*:

- an initial Bond claim with the accompanying promise to pay all Contract Balances; and

- an additional 15 day written notice to cure if Liberty is not proceeding with its Bond obligations.

In particular, Liberty contends first that Rising Sun failed to satisfy its obligations under Paragraph 2 of the Bond, ECF 14-2 at 3-4, which states, Bond ¶ 2, ECF 17-1 at 3:

2.  If there is no Owner Default, Surety's obligation under this Bond shall arise after:

2.1  Owner has notified Contractor and Surety, at the addresses described in Paragraph 9 below, that Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with Contractor and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract.  If Owner, Contractor, and Surety agree, Contractor shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive Owner's right, if any, subsequently to declare a Contractor Default; and

2.2  Owner has declared a Contractor Default and formally terminated Contractor's right to complete the Contract.  Such Contractor Default shall not be declared earlier than 20 days after Contractor and Surety have received notice as provided in Paragraph 2.1; and

2.3  Owner has agreed to pay the Balance of the Contract Price to:

1.  Surety in accordance with the terms of the Contract; or

2. Another contractor selected pursuant to Paragraph 3.3 to perform the Contract.

Liberty emphasizes the obligation set forth in Paragraph 2.3, which provides that the Surety's obligation under the Bond arises only after the "Owner has agreed to pay the Balance of the Contract Price . . . ."  Bond ¶ 2.3, ECF 17-1 at 3.

The Bond defines "Balance of the Contract Price" as follows, Bond ¶ 11.1, ECF 17-1 at 4:

The total amount payable by Owner to Contractor under the Contract after all proper adjustments have been made, including allowance to Contractor of any amounts received or to be received by Owner in settlement of insurance or other Claims for damages to which Contractor is entitled, reduced by all valid and proper payments made to or on behalf of Contractor under the Contract.

Liberty adds, ECF 14-2 at 4 (internal citations omitted):

Once Rising Sun has complied with the conditions precedent in Paragraph 2, Liberty then has several options, including completing the Project by using forces of its own choosing.  These options are set forth in Paragraph 3 of the Bond.  These option include, *inter alia*:

- Liberty arranges to have HRI complete the job;

- Liberty itself completes the job; or
- Liberty arranges for a replacement contractor to complete the job.

These choices have been eliminated by the unilateral decision of Rising Sun to select its own contractor.

Liberty explains, *id.* (citations and footnotes omitted) (emphasis supplied by Liberty):

> The condition precedent of Paragraph 2.3 [requiring payment of the contract price] was never fulfilled . . . . Rising Sun purported to terminate HRI via letter dated May 30, 2014. Nowhere in that letter is any claim asserted against the Bond. More importantly, the letter contains no promise whatsoever that Rising Sun would pay over the Contract Balances to Liberty. To the contrary, the letter advises that even **before** HRI was terminated, Rising Sun had begun securing a replacement contractor **itself**. Rising Sun then "reserved" possible future claims against HRI and Liberty. The position taken by Rising Sun in its May 30th letter ignores the steps clearly laid out in the Bond and thereby nullifies the important protections afforded Liberty.

In Liberty's view, payment of the Bond also requires 15-days additional notice to cure, under Paragraph 4 of the Bond. ECF 14-2 at 5. In particular, the Bond states, Bond ¶ 4, ECF 17-1 at 3:

> 4. If Surety does not proceed as provided in Paragraph 3 with reasonable promptness, Surety shall be deemed to be in default on this Bond 15 days after receipt of an additional written notice from Owner to Surety demanding that Surety perform its obligations under this Bond, and Owner shall be entitled to enforce any remedy available to Owner. If Surety proceeds as provided in Paragraph 3.4, and Owner refuses the payment tendered or Surety has denied liability, in whole or in part, without further notice Owner shall be entitled to enforce any remedy available to Owner.

Liberty alleges, ECF 14-2 at 5 (citations omitted):

> Rising Sun did not provide this additional written notice to Liberty demanding performance on the Bond. To the contrary, the Counterclaim concedes that Rising Sun simply chose to skip these steps, hire a replacement contractor itself, and reserve its right to send the bill to Liberty. This is an utter violation of the protections afforded Liberty under the Bond.

In sum, Liberty posits: "Rising Sun's Counterclaim clearly acknowledges that neither of these conditions precedents were satisfied.  Hence, Rising Sun's Bond claim must fail."  ECF 14-2 at 3.

In response, Rising Sun submits that it satisfied the conditions precedent under the Bond.  And, of relevance here, Rising Sun asserts in the Counterclaim that it "fully complied with the terms and conditions of the Performance Bond."  ECF 8 at 30 ¶ 60.   Rising Sun argues that "whether a condition precedent to performance of the contract has been satisfied is an issue of fact, not an issue of law."  ECF 17 at 6 (citations omitted).  In this respect, Rising Sun suggests that, given the procedural posture of the case, it is not appropriate for the court to determine whether the conditions precedent were satisfied.  I agree.

"A condition precedent in a contract is 'a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises.'"  *All State Home Mortgage, Inc. v. Daniel,* 187 Md. App. 166, 182, 977 A.2d 438, 447 (2009) (quoting *Chirichella v. Erwin,* 270 Md. 178, 310 A.2d 555, 557 (1973)), *cert. denied*, 410 Md. 560, 979 A.2d 707 (2009).  With respect to conditions precedent in particular, Fed. R. Civ. P. 9(c) provides:   "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

In 2 MOORE'S FEDERAL PRACTICE, § 9.04[1] (3d ed. 1997) (internal references and citations omitted), it states:

> A general allegation of the performance or occurrence of a condition precedent is typically quite brief and to the point.  Thus, for a contract claim, it is sufficient that the pleader "tracks the language" of Rule 9(c) by alleging "all conditions precedent have occurred or been performed," or simply alleges that the claimant "has performed all of its obligations as an insured under the [p]olicy," or "has at all times performed all its proper and legitimate duties and obligations under its contract."

This acceptance of general averments regarding the satisfaction of conditions precedent is also supported by Charles Alan Wright and Arthur R. Miller in FEDERAL PRACTICE & PROCEDURE (3rd ed. 2008).  At 5A FEDERAL PRACTICE & PROCEDURE § 1302, the authors state:

> [R]ule [9(c)] constitutes a departure from the common law requirement that the occurrence or performance of each condition precedent be alleged in detail. Instead, the rule follows the provisions found in many state codes that permit a general allegation of fulfillment of conditions precedent and require specific denials of performance to raise an issue for trial.[1]

Of particular relevance here, Wright and Miller also note:  "Of course, if the defendant challenges the subdivision (c) averment [of satisfying the condition precedent], a disputed issue will have been raised that may be resolved only on a summary judgment motion or at trial."  *Id.* § 1303.  As indicated, a motion asserting failure of the complaint to state a claim typically "does not resolve contests surrounding the facts."  *Goldsboro*, *supra*, 178 F.3d at 243 (internal quotation marks omitted).

*Nat'l Labor Coll., Inc. v. Hillier Grp. Architecture New Jersey, Inc.*, No. DKC 09-1954, 2012 WL 3264959, at *5-6 (D. Md. Aug. 9, 2012), is instructive.  In *Hillier*, plaintiff National Labor College, Inc. retained The Hillier Group Architecture, New Jersey, Inc. ("Hillier") to construct a two-story multipurpose building.  *Id.* at *1.  To complete the project, Hillier subsequently contracted with Tolk, Inc. ("Tolk") to provide mechanical, electrical, and plumbing design.  When completion of the project was delayed ten months, plaintiff sued Hiller and Tolk for breach of contract.  *Id.*  Subsequently, Hiller filed a third-party complaint against Tolk, alleging that the damages sustained by plaintiff were in large part due to Tolk's omissions and errors.  *Id.*  In a motion to dismiss, Tolk contended, *inter alia*, that dismissal of the third-party complaint was warranted because Hillier failed to plead satisfaction of a condition precedent, by

which Hillier was required to provide written notice to Tolk that it may have a claim against it. *Id.* at *5-6.

Judge Chasanow held that Hillier need not plead that it satisfied the notice requirement. *Id.* at *6. She explained that Rule 9(c) "'does not expressly require that performance of conditions be pled, it merely sets forth the manner in which such pleadings should be made.'" *Id.* (quoting *Kiernan v. Zurich Companies,* 150 F.3d 1120, 1123 (9th Cir. 1998)). Indeed, Judge Chasanow noted that "'the reference in Rule 9(c) to conditions precedent simply distinguishes what suffices when an allegation of performance is made from what satisfies when performance is denied.'" *Id.* (quoting *Shim v. PNC Bank, N.A.,* No. 10–00156, 2010 WL 3566733, at *2 (D. Haw. Sept. 14, 2010)). She also stated: "If Tolk wishes to raise failure to satisfy a condition precedent as an affirmative defense, it is free to do so in a subsequent pleading and/or motion." *Id.*

In view of the foregoing, Rising Sun's general averment in the Counterclaim that it has "fully complied with the terms and conditions of the Performance Bond", ECF 8 at 30 ¶ 60, is sufficient to state a claim for relief and support a cognizable legal theory. Whether the conditions precedent were satisfied is a question of fact that cannot be resolved by the Court at this time.[13] *Goldsboro*, *supra*, 178 F.3d at 243. Indeed, as Rising Sun points out, "none of the cases relied upon by Liberty in its Memorandum regarding the satisfaction of conditions precedent to a surety's obligation to act were decided on a motion to dismiss pursuant to Fed. R. Civ. P. 12(B)(6), or the state equivalent thereto." ECF 17 at 7 n.3; *see e.g.*, *Miller Lumber Indus., Inc. v. Brown*, 46 Md. App. 399, 405-09, 416 A.2d 302, 305-06 (1980) (reversing lower

---

[13] I note that in its Opposition, Rising Sun also argues in the alternative that the Bond's conditions precedent are inapplicable. ECF 17 at 7-10. Because Rising Sun's general averment that it satisfied the Bond's terms and conditions, ECF 8 at 30 ¶ 60, is sufficient to state a claim, I need not reach the merits of this argument.

court's grant of summary judgment in favor of obligee where surety had appended a condition precedent to the performance bond and the condition had not been performed by obligee); *Hunt Const. Grp., Inc. v. Nat'l Wrecking Corp.*, 587 F.3d 1119, 1122 (D.C. Cir. 2009) (affirming trial court's grant of summary judgment in favor of sureties due to obligee's failure to satisfy condition precedent of providing timely notice of default to sureties); *Seaboard Sur. Co. v. Town of Greenfield, ex rel. Greenfield Middle Sch. Bldg. Comm.*, 370 F.3d 215, 223-24 (1st Cir. 2004) (affirming district court's grant of summary judgment in favor of surety on the ground that surety's duty was discharged by obligee's failure to comply with a condition precedent).

### III. CONCLUSION

Dismissal at this stage of the case on the basis of an alleged failure by Rising Sun to satisfy conditions precedent is premature.  Any contentions that the conditions precedent were not fulfilled is a factual matter that can be raised and pursued at a later time.  Therefore, I will deny Liberty's Motion to Dismiss the Counterclaim (ECF 14), without prejudice to Liberty's right to renew its contention at a later stage in the case.

A separate Order follows, consistent with this Memorandum Opinion.


Date: January 30, 2015                                  _____/s/_____
                                                        Ellen Lipton Hollander
                                                        United States District Judge